COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Felton, Judges Clements and Beales
Argued by teleconference


RICHARD J. CHASEN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0004-07-2                      JUDGE RANDOLPH A. BEALES
                                                         MAY 20, 2008
KAREN S. CHASEN


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                              Melvin R. Hughes, Jr., Judge

            Charles E. Powers (Terrence R. Batzli; Batzli Wood & Stiles, P.C.,
            on briefs), for appellant.

            Murray J. Janus (Bremner, Janus, Cook & Stone, on brief), for
            appellee.


        Richard J. Chasen (husband) presents two issues in this appeal from a final divorce

decree.  First, husband asserts the trial court erred in awarding Karen S. Chasen (wife) $10,000

per month in spousal support.  Second, husband contends that the trial court erred in denying his

motion to correct an alleged scrivener's error in the parties' property settlement agreement.  For

the reasons that follow, we affirm the trial court.

                              I.  SPOUSAL SUPPORT[1]

        "On appeal, we construe the evidence in the light most favorable to wife, the prevailing

party below, granting to her evidence all reasonable inferences fairly deducible therefrom."

Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995).

--------------------------------------------------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The late Honorable Randall G. Johnson, Judge of the Circuit Court of the City of
Richmond, decided the issue of spousal support in this case.

Husband and wife were married in 1978 and separated in 2004. They successfully resolved all issues relating to equitable distribution in a property settlement agreement (PSA), which they entered into on January 11, 2006. Husband and wife, however, were unable to reach an agreement on the issue of spousal support. Consequently, they presented that sole issue to the trial court for resolution. The trial court held a hearing on the issue of spousal support on January 20, 2006, and, thereafter, issued a letter opinion on March 1, 2006 that awarded wife $10,000 a month in spousal support. That letter opinion was incorporated by reference into the final divorce decree entered on March 16, 2006.[2]

In his nine page letter opinion, the trial judge noted that husband "stipulated that he . . . is able to support [wife] in the manner to which she was accustomed during the marriage." The trial court then discussed extensively the standard of living that wife was accustomed to during the marriage, finding that her "expenditures would be considered extravagant by many people, [but] they are what [wife] was accustomed to when she and [husband] were married and living together." The court also found that wife's part-time employment, which she had held for fourteen years, "was with the full acquiescence of [husband]."

However, the trial court also found that wife's living expenses were actually less than the expenses she showed on her income and expense statement. The court accepted the expense figures contained in an analysis performed by an accountant, Steven Biegler. Biegler concluded that the parties had $124,559 in traceable expenses during 2004. The court found that wife would be responsible for more than 65% of those expenses, since some of the expenses such as utilities, etc., were now solely her responsibility. Therefore, the court concluded, the amount of monthly expenses attributable to wife would be $7,736. Nevertheless, the court awarded her

---

[2] The parties' PSA was also affirmed, ratified, and incorporated but not merged into the March 16, 2006 final divorce decree.

$10,000 a month in spousal support, citing inflation, the court's opinion that the parties did not have a paper trail for all of their expenses, and the tax consequences of the award based on wife's income bracket.

In setting the award amount, the trial court said that it considered all of the statutory factors under Code § 20-107.1(E), the statute dealing with the award of spousal support, but noted specifically that the court contemplated

> the obligations, needs, and financial resources of the parties (subsection E1), the standard of living established during the marriage (subsection E2), the duration of the marriage (subsection E3), the age and physical and mental condition of the parties (subsection E4), the provisions made with regard to the parties' marital property under the parties' equitable distribution agreement (subsection E8), and the tax consequences of any award made (subsection E13).

However, in addition, the court stated that "[t]he other factors also support the award." With respect to factor (E)(5), the court said that "all of the parties' children are grown and there are no special circumstances related to any child that affects spousal support." Next, the court said that, since husband was the "breadwinner" of the family, but wife took care of the house and children, "[t]he parties' total contributions to the well-being of the family were equal, thus supporting [wife's] entitlement to support under subsection E6." The court did not consider husband's property interests (subsection (E)(7)), given his stipulation of his ability to support wife in the manner to which she was accustomed during the marriage. Also, given that stipulation, the court found that the "earning capacities of the parties (subsection 9) and the opportunity to increase their earning capacities (subsection 10) are not relevant." Furthermore, "the parties [had] jointly decided that Ms. Chasen would only work part time during the last fourteen years (subsection E11)." "Lastly, there is no evidence relating to what extent either party contributed to the attainment of education, training, career position, or profession of the other party (subsection E12), and that factor play[ed] no role in the court's decision."

- 3 -

"In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support." Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005). "Accordingly, our review is limited to determining whether the trial court clearly abused its discretion." Id.

> In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award, but it is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." That being said, the trial court's findings "must have some foundation based on the evidence presented."

Id. (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). Finally, "[w]here that evidentiary foundation exists and the record discloses that the trial court 'has given due consideration to each of [the statutory] factors,' we will not disturb its determination as to spousal support on appeal." Id.

Here, the trial court issued a nine page written opinion that comprehensively discussed its award of spousal support to wife. In that opinion, the trial court specifically referenced each of the thirteen factors listed in Code § 20-107.1(E) and recited evidence relevant to each factor. Moreover, while not even required to do so under this Court's precedents, the trial court discussed the weight it applied to the different statutory factors and specifically found that several factors were not relevant given husband's stipulation of his ability to support wife in the manner to which she was accustomed during the marriage. In setting the amount of spousal support at $10,000 per month, the trial court detailed the evidence relevant to the factors it considered most important, most notably the parties' standard of living, and fashioned an award that would not require wife to invade her own assets to adequately support herself. See Zipf v. Zipf, 8 Va. App. 387, 398-99, 382 S.E.2d 263, 269 (1989) ("The law does not require the spouse who seeks support to exhaust his or her own estate in order to qualify, relieving the other spouse of all obligation of support until that estate is depleted.").

- 4 -

Based upon the foregoing, we hold that the trial court did not abuse its discretion in awarding wife spousal support. The evidence in the record, which the trial court extensively discussed in its detailed and comprehensive letter opinion, provided an adequate foundation for the trial court's award of $10,000 per month to wife.

## II. CLERICAL ERROR

Husband argues that the PSA erroneously specified, under the section listing husband's intangible assets, that he would retain only "his" interest in the business Chasen Properties, LLC. According to husband, the parties intended that he retain both parties' interest in that business, and, therefore, argues that the agreement should read that husband retained "their" share instead of only "his" share of Chasen Properties, LLC. Claiming that his counsel inadvertently substituted the word "his" for "their" while drafting the PSA, husband moved the trial court, pursuant to the court's authority under Code § 8.01-428(B), to correct a clerical error in an order and to replace the word "his" with the word "their," thereby showing that he, in fact, retained both parties' interests in Chasen Properties, LLC.

To decide this motion, the trial court examined a series of letters the parties exchanged while negotiating the PSA. In an October 27, 2005 letter, husband asked wife to cede her interest in Chasen Properties, LLC, in addition to her interest in two other businesses, to husband. In wife's response to that letter, she agreed to relinquish her interest in the two other businesses, JACKAN, LLC and Chasen Family Limited Partnership to their children, but did not mention Chasen Properties, LLC. The record does not show that any other mention of the relinquishment of wife's interest in Chasen Properties, LLC was made during the parties' settlement negotiations.

The trial court denied husband's motion for correction of a clerical error under Code § 8.01-428(B). The trial court said that it was "left to wonder if indeed the parties ever came to

- 5 -

an understanding of what disposition they made as to Chasen Properties[, LLC]." The court held, therefore, that, because there was no evidence of a formal acceptance to husband's offer, "the evidence does not clearly support the assertion that an error was made."

Code § 8.01-428(B) reads:

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from *oversight or from an inadvertent omission* may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

(Emphasis added.) "Code § 8.01-428(B) confers upon a court the power to correct on its own initiative clerical mistakes in judgments which arise from oversight or inadvertent omission. However, to invoke such authority the evidence must clearly support the conclusion that an error of oversight or inadvertence has been made." Cass v. Lassiter, 2 Va. App. 273, 277, 343 S.E.2d 470, 473 (1986).

Assuming without deciding that Code § 8.01-428(B) allows the trial court to correct an alleged clerical error in a PSA (i.e., a contract), we hold that the evidence does not support husband's contention that a clerical error was made. There is no evidence in this record to suggest a meeting of the minds (i.e., a contract – offer and acceptance) over wife's relinquishment of her interest in Chasen Properties. As the trial court properly noted, wife's silence on this issue cannot be found to be an acceptance of husband's offer. See Virginia Farm Bureau Mut. Ins. Co. v. Hodges, 238 Va. 692, 695, 385 S.E.2d 612, 614 (1989) ("A binding contract is not formed until the offeree communicates an acceptance to the offeror.").

While husband discusses "inconsistencies" in the PSA that suggest a mistake was made, we note that, in fact, the PSA, under the heading of husband's intangible assets, consistently lists husband retaining "his" interest in all three businesses (JACKAN, LLC; Chasen Family Limited

Partnership; and Chasen Properties, LLC).[3]  In paragraph (d) of that section, the PSA provides that wife "will convey to the children of the parties [not to husband] her entire ownership interest in the Chasen Family Limited Partnership and in JACKAN, LLC."  A reference to Chasen Properties, LLC is conspicuously absent from the list of businesses found in paragraph (d).

Because the record is simply devoid of wife's acceptance of husband's offer to relinquish her own interest in Chasen Properties, LLC, the evidence does not clearly support husband's contention that an error "arising from oversight or from an inadvertent omission" was made. Therefore, the trial court was not authorized under Code § 8.01-428(B) to substitute the word "their" for "his" in this section of the parties' PSA.  Accordingly, we hold that the trial court did not err in denying husband's motion to correct the alleged clerical error.

---

[3] Section 17(a) of the parties' PSA provides:

> Husband shall retain all right, title, and interest in any and ownership of any stocks, bonds, mutual funds or other funds on deposit in the following intangible assets free and clear of any claim or interest of Wife and any such assets titled solely in his name:
>
> Husband's Assets
>
> Jefferson Lakeside Stock
> Nicholas Funds
> Provident Bank CD
> NRS Products, LLC
> N. Chasen & Son, Inc.
> *His* interest in JACKAN, LLC
> Chasen Business Interiors, Inc.
> *His* interest in Chasen Family Limited Partnership
> Action Investments, LLC
> Proceeds of sale of Pro-Motions, Inc.
> *His* interest in Chasen Properties, LLC
> California Lubricants, Limited Partnership
> Various Deed of Trust Notes including Newman, Pham, Zasler, Marshall, Williams, Pro-Property and United IMPT

(Emphasis added.)

### III. WIFE'S ATTORNEY'S FEES AND COSTS ON APPEAL

Wife requests an award of attorney's fees and costs related to this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In light of our decisions on both of the issues presented in this case, we award to wife her reasonable attorney's fees and costs incurred in this appeal.

### IV. CONCLUSION

For the reasons stated above, we affirm the trial court and remand for the trial court to determine the amount of wife's reasonable attorney's fees and costs relating to this appeal.

Affirmed and remanded.